## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANNIE B.,[1]

      Plaintiff,

                              **Case No. 1:23-2773**

      v.                         **Magistrate Judge Norah McCann King**

LELAND DUDEK,[2]
**Acting Commissioner of Social Security,**

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Annie B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the decision.

## I.    PROCEDURAL HISTORY

On March 10, 2021, Plaintiff filed her application for benefits, alleging that she has been disabled since January 29, 2021. R. 235–36. The application was denied initially and upon reconsideration. R. 135–44, 146–55. Plaintiff sought a *de novo* hearing before an administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

law judge ("ALJ"). R. 156–57. ALJ Trina Moore held a hearing on June 22, 2022, at which

Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 31–52. In a

decision dated September 19, 2022, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act at any time from January 29, 2021, Plaintiff's alleged

disability onset date, through December 31, 2021, the date on which Plaintiff was last insured for

benefits. R. 14–25. That decision became final when the Appeals Council declined review on

March 31, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF

No. 1. On March 14, 2024, Plaintiff consented to disposition of the matter by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. ECF No. 12.[3] On March 19, 2024, the case was reassigned to the undersigned. ECF

No. 13. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

      Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. A court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

B.    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec*., 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 57 years old on the date on which she was last insured for benefits. R. 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 29, 2021, her alleged disability onset date, and December 31, 2022, the date on which she was last insured. R. 16.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease, degenerative joint disease of the knees, strain of the Achilles tendon, polyarthritis, and chronic obstructive pulmonary disease. *Id*. The ALJ also found that Plaintiff's obesity, Bell's Palsy, and post concussive syndrome were not severe impairments. R. 16–17.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 17–19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 19–23. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a corrections officer, supervisor as generally performed (not as actually performed). R. 23.

Alternatively, at step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as a security guard and as a gate guard–existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 24. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 29, 2021, her alleged disability onset date, through December 31, 2021, the date on which she was last insured for benefits. R. 24–25.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision be

reversed and remanded for further proceedings. *Plaintiff's Brief in Support of Review,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 11. The Acting Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 10.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Juan Carlos Cornejo, D.O.

On August 18, 2021, Juan Carlos Cornejo, D.O., conducted an orthopedic consultative evaluation at the request of the State of New Jersey Division of Disability Determination Services. R. 1158–65. Plaintiff reported neck and back pain since 2000, diagnoses of disc herniations and disc bulges, and treatment with steroid injections, physical therapy, and gabapentin. R. 1158. Plaintiff also reported right knee pain since 2001, which had been treated both non-surgically and by meniscectomy in 2001. R. 1159. According to Plaintiff, her activities of daily living included going to a store or office by herself or with someone, an inability to do simple laundry or simple cleaning, an ability to feed herself and to make simple meals, dress herself and take her shoes off and on. She could brush her teeth and take a shower or bath. *Id*. Upon physical examination, Dr. Cornejo observed as follows:

> **GENERAL OBSERVATION**
> The examinee is an adult female who appeared in no acute distress. She is well-nourished and appeared appropriate for her stated age. She was able to get on and off the examining table. She was able to go from lying down to sitting up position. She was able to dress herself. She was comfortable in a seated position during the interview. A female staff was present during the evaluation for same gender medical chaperoning. An orthopedic physical examination was then performed.
>
> **UPPER EXTREMITY EXAMINATION**
> Examination of the upper extremities showed no evidence of joint deformity or instability. The upper extremities reveal no warmth. Shoulders, elbows, wrists, and fingers showed normal range of motion. There was no significant tenderness to

direct palpation of the right or left upper extremities. Biceps, triceps, and brachioradialis deep tendon reflexes were 2+ bilaterally symmetric. There was no sensory deficit to light touch and pinprick of the upper extremities bilaterally. Pinch strength and grip strength were 5/5 bilaterally. Muscle strength of the upper extremities, including the biceps and triceps, were graded at 5/5 bilaterally. The claimant was able to extend the fingers, make a fist, and oppose the thumbs bilaterally.

## LOWER EXTREMITY EXAMINATION
Examination of the lower extremities showed no evidence of joint deformity or instability. The lower extremities reveal no warmth. Hips, knees, and ankles showed normal range of motion. There was tenderness to direct palpation of the medial and lateral joint line of both knees. Patella and Achilles deep tendon reflexes were 2+ bilaterally symmetric. There was no sensory deficit to light touch and pinprick of the lower extremities bilaterally. Muscle strength of the bilateral hips was decreased in flexion and extension at 4/5.

## CERVICAL SPINE EXAMINATION
An examination of the cervical spine showed a normal lordotic curve. There was decreased range of motion bilaterally in flexion at 40 degrees. There was no spasm or tenderness to direct palpation of the trapezius, cervical paraspinal muscles, or along the spinous process of the cervical spine. Spurling's Test was negative bilaterally.

## THORACIC SPINE EXAMINATION
An examination of the thoracic spine showed a normal kyphotic curve. There was normal range of motion bilaterally in flexion, extension, rotation, and side bending (lateral flexion). There was no spasm and tenderness to direct palpation of the medial scapula, parathoracic, middle trapezius muscle areas, or along the spinous process of the thoracic spine. No winging of the scapula was observed.

## LUMBOSACRAL SPINE EXAMINATION
An examination of the lumbar spine showed a normal lordotic curve. There was decreased range of motion bilaterally in flexion at 60 degrees. There was no significant spasm and tenderness to direct palpation along the paralumbar musculature and lumbar spinous process. There was no lower back pain or radicular symptoms on sitting straight leg raising maneuver test. There was no lower back pain or radicular symptoms on supine straight leg raising maneuver test.

## GAIT
The examinee walked with a normal physiologic gait. She did not require the use of an ambulation aide. The examinee was able to heel walk, toe walk, and squat without difficulty.

R. 1160–61; *see also* 1163–65 (reflecting range of motion report form). Dr. Cornejo also

considered x-rays taken on August 24, 2021, of Plaintiff's cervical spine, lumbar spine, and right

knee, as follows:

> Cervical spine x-ray showed mild degenerative changes are more pronounced at CS-6 and C6-7.
>
> Right knee x-ray showed mild medial compartment osteoarthritis.
>
> Lumbar spine x-ray showed degenerative changes are more pronounced at L4-5 and L5-S 1.
>
> Recommended for follow up with physician for abnormal findings.

R. 1161. Dr. Cornejo went on to summarize and conclude as follows:

> **SUMMARY**
> In regard to her spine, she has had neck and back pain since 2000. She was treated non surgically for her neck and back. On exam, she has decreased mobility [in] the cervical and lumbosacral spine. She has decreased strength of the lower extremities. She was able to ambulate without the use of a hand held assistive device.
> In regard to her knee pain, she has had right knee pain since 2001. She was treated both non-surgically and surgically. On exam, she has good mobility of both knees. She was able to ambulate without the use of a handheld assistive device.
>
> **CONCLUSION**
> The claimant would have difficulty with bending and turning her neck and back. She would be able to walk and stand for a reasonable amount of time with needed breaks. She would be able to sit for a reasonable amount time with needed breaks. No significant balance limitations were observed during the evaluation. She has good use of her upper extremities for movements such as reaching. She has good functionality of her right and left hands. She would be able to handle fine and small sized objects. She has no significant limitations to fingering such as picking and pinching objects. She would have difficulty with physically exerting activity. However, she would be able to do sedentary activity with needed breaks.

R. 1161–62.

### B.    Renee Hickman, M.D.

On November 3, 2021, Renee Hickman, M.D., Plaintiff's primary care provider,

completed a two-page, check-the-box, and fill-in-the-blank medical source statement of

Plaintiff's ability to do work-related activities. R. 1229–30. Dr. Hickman diagnosed lumbago and

lumbar radiculopathy with symptoms of low back pain and leg pain, greater on the right than on the left. R. 1229. Dr. Hickman opined that, in an 8-hour workday, Plaintiff could sit for up to 2 hours, stand/walk 1 hour, and must alternate between sitting and standing every 30 minutes to alleviate pain or discomfort. *Id*. Plaintiff could occasionally (meaning cumulatively up to one-third, 6% to 33%, of an 8-hour workday) lift and carry less than 10 pounds; rarely (meaning cumulatively between 1% to 5% of an 8-hour workday) lift and carry up to 20 pounds; and never lift and carry 25 pounds or more. *Id*. Plaintiff could rarely engage in upper extremity pushing and/or pulling and could never engage in lower extremity pushing and/or pulling. *Id*. According to Dr. Hickman, Plaintiff could occasionally reach in all directions (including overhead), handle, finger, and feel. *Id*. Plaintiff's experience of pain or other symptoms were severe enough to frequently (meaning cumulatively one-third to two-thirds, 34% to 66%, of an 8-hour workday) interfere with the attention and concentration needed to perform even simple work tasks. R. 1230. She further opined that Plaintiff must take unscheduled 15-minute breaks every 60 minutes. *Id.* Plaintiff would likely be absent from work due to her impairment(s) or treatment three days per month. *Id*.

V.    **DISCUSSION**

A.    **RFC and Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating the opinions of Drs. Cornejo and Hickman, resulting in a flawed RFC. *Plaintiff's Brief in Support of Review*, ECF No. 8, pp. 13–24; *Plaintiff's Reply Brief*, ECF No. 11, pp. 1–9. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and

11

satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other

---

[4] As previously noted, Plaintiff's claim was filed on January 29, 2021.

evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there

13

are two equally persuasive medical opinions about the same issue that are not exactly the same,

then the ALJ must explain how he or she considered the other factors.").

At step four of the sequential evaluation process in this matter, the ALJ found that

Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with additional limitations. The claimant can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, and crouch. The claimant can never climb ladders, ropes, or scaffolds, and can never crawl. The claimant must avoid concentrated exposure to hazards such as unprotected heights and moving mechanical parts. The claimant must avoid concentrated exposure to extreme temperatures, pulmonary irritants, humidity, and wetness.

R. 19. In reaching this determination, the ALJ considered the medical record, including, *inter*

*alia*, the examination findings of Drs. Hickman and Cornejo:

> Records of primary care provider, Renee Hickman, MD, of Capital Health, dated in late 2020 show that the claimant continued to complain of back pain. Exhibit B9F/20. The claimant reported numbness, weakness, and tingling. Clinical examination showed positive straight leg raising test, pain on movement of the hip, but no loss of sensation in the lower extremities. An MRI performed in November 2020 showed lower lumbar facet arthrosis and minimal to mild disc bulges with focal protruding central disc herniation at L5-S1. Exhibit B9F/24. The claimant was treated with naproxen and a pain patch, and referred to an orthopedic physician. Exhibit B9F/20. In late 2020, the claimant sought treatment at Rothman Institute. Exhibit B10F. The claimant reported lower back pain and pain in her right leg. She stated that physical therapy did not help her pain. However, upon clinical examination, results were largely unremarkable. Specifically, the claimant had full spinal range of motion, no spinal tenderness, negative straight leg raising test, negative Hoffman's and Spurling's, full motor strength, intact reflexes, intact pulses, intact sensation, and the claimant was able to perform tandem gait and heel and toe walk without difficulty. Exhibit B10F/15. The claimant was diagnosed with lumbar radiculopathy. Exhibit B10F/15. More recent records of Rothman Institute show that the claimant's leg pain had improved somewhat but that she still complained of lower back pain and difficulty walking in cold weather, but she denied numbness and tingling. Exhibit B13F/2. The claimant underwent epidural steroid injections. Exhibit B13F. Examination in mid-2021 showed full range of motion, negative straight leg test, full strength, and intact sensation. Exhibit B13F/3. Physical therapy records dated in 2021 contain complaints of only mild pain and difficulty. Exhibit B12F.

14

At a visit to Dr. Hickman in April 2021, the claimant reported pain in her left heel and ankle area. Exhibit B9F/9. She stated her pain was a 4 on a scale of 1 to 10, and denied numbness and tingling of the legs and feet. Exhibit B9F/11. Examination showed tenderness and limited range of motion of the ankle. Examination at Rothman showed no ligamentous laxity, symmetrical alignment, good pulses, intact resting tension, and completely intact Achilles' tendon. Exhibit B10F/9. An x-ray showed that the claimant had a slightly prominent Haglund's prominence, but no evidence of any spur, dislocation, fracture or abnormality of the left foot. Exhibit B10F/9. The claimant was diagnosed with strain of the Achilles tendon. Exhibit B10F/9.

The claimant was evaluated by consultative examiner, Juan Carlos Cornejo, DO, in August 2021. Exhibit B11F. The claimant reported right knee pain and a right knee menisectomy in 2001. She complained of difficulty with walking and bending her knees. Clinical examination by Dr. Cornejo showed decreased flexion of the hips, decreased range of motion of the cervical spine, tenderness at both knee joints, and decreased range of motion of the lumbar spine, but otherwise unremarkable results, including unremarkable examination of the upper extremities, unremarkable examination of the lower extremities, no tenderness of the cervical spine, normal examination of the thoracic spine, no spasm or tenderness of the lumbar spine, negative straight leg raising test, normal gait, and ability to heel walk, toe walk, and squat without difficulty. Dr. Cornejo stated that the claimant did not require the use of an ambulation aide. Dr. Cornejo diagnosed the claimant with cervical degenerative disc disease, lumbar degenerative disc disease, and bilateral knee osteoarthritis. Exhibit B11F.

R. 21. The ALJ went on to find, *inter alia*, that the opinions of Drs. Cornejo and Hickman were

unpersuasive, explaining as follows:

Turning to the opinion evidence, the undersigned has considered the opinion of consultative examiner, Juan Carlos Cornejo, DO, stating as follows. The claimant would have difficulty with bending and turning her neck and back. She would be able to walk and stand for a reasonable amount of time with needed breaks. She would be able to sit for a reasonable amount of time with needed breaks. No significant balance limitations were observed during the evaluation. She has good use of her upper extremities for movements such as reaching. She has good functionality of her right and left hands. She would be able to handle fine and small sized objects. She has no significant limitations to fingering such as picking and pinching objects. She would have difficulty with physically exerting activity. However, she would be able to do sedentary activity with needed breaks. Exhibit B11F. The undersigned does not find this opinion persuasive, as it is not supported by Dr. Cornejo's examination findings, and it is not consistent with the record that better supports a finding of light exertion. For example, although Dr. Cornejo found some decreased spinal range of motion, knee tenderness, and weakness of the hips,

he also found unremarkable examination of the upper extremities, unremarkable examination of the lower extremities, no tenderness of the cervical spine, normal examination of the thoracic spine, no spasm or tenderness of the lumbar spine, negative straight leg raising test, normal gait, and ability to heel walk, toe walk, and squat without difficulty.

The undersigned has considered the opinion dated in November 2021 from primary care provider, Renee Hickman, MD, of Capital Health, indicating that the claimant can sit for no more than 2 hours in an 8-hour workday, can stand and/or walk for no more than 1 hour in an 8-hour workday, can rarely lift 10 pounds, must use a sit/stand option every 30 minutes, will frequently lose concentration, must have a 15 minute break every hour, and will be absent from work 3 days per month. Exhibit B14F. The undersigned does not find this opinion persuasive, as the extreme level of limitation expressed in this opinion is not supported by Dr. Hickman's own treatment notes, and it is inconsistent with the record. For example, although the claimant complained of worsening back pain at a visit to Dr. Hickman in late 2020, the claimant's followup visits to an orthopedic physician at Rothman showed unremarkable examination findings. Exhibit B9F; Exhibit B10F. As for the claimant's ankle, examination showed no tear of the Achilles tendon. The claimant was treated conservatively, and the record shows no surgical intervention. The claimant testified that there was never any surgery recommended to her. The claimant is able to perform her activities of daily living, for example, she prepares meals, showers with a chair, exercises, reads, watches television, and does light household chores, cares for her dog, performs her personal care, drives a car, can go out alone, shops in stores, finishes what she starts, goes to church, and socializes and visits with friends and family.

R. 22.

Turning first to Dr. Cornejo's opinion, Plaintiff argues that the ALJ failed to explain her conclusion that "the record better supports a finding of light exertion." *Plaintiff's Brief in Support of Review*, ECF No. 8, p. 18 (internal quotation marks omitted); *see also Plaintiff's Reply Brief*, ECF No. 11, p. 6. Plaintiff insists that Dr. Cornejo's notes are "consistent" with his opined functional limitations and that the ALJ improperly relied on a highly selective analysis of the evidence. *Plaintiff's Brief in Support of Review*, ECF No. 8, pp. 21–22; *Plaintiff's Reply Brief*, ECF No. 11, pp. 6, 9. Plaintiff further contends that the ALJ relied on Dr. Cornejo's findings but crafted a different RFC than the doctor's opinion suggested, and argues that the ALJ improperly used her own lay opinion to construct a RFC from raw medical data. *Plaintiff's Brief*

*in Support of Review*, ECF No. 8, p. 18; *Plaintiff's Reply Brief*, ECF No. 11, pp. 6, 9. Plaintiff

goes on to argue that the ALJ's errors in this regard are not harmless because a limitation to

sedentary work would direct a finding that she was disabled. *Plaintiff's Brief in Support of*

*Review*, ECF No. 8, pp. 23–24. Plaintiff's arguments are not well taken.

The ALJ found that Dr. Cornejo's opinions were "not consistent with the record that

better supports a finding of light exertion." R. 22. A fair reading of the ALJ's decision in its

entirety makes clear that the ALJ did not find Dr. Cornejo's extreme limitations to be consistent

with the many unremarkable findings detailed by the ALJ earlier in the decision, including, *inter*

*alia*, records from 2019 that reflected Plaintiff's mild complaints of lower back pain and

difficulty and Plaintiff's assessment as having excellent rehabilitation potential; 2019 and 2020

physical examinations for back pain at Ivy Rehabilitation that showed no more than moderate

symptoms and physical therapy records that reflected improvement in mobility and muscle

function; 2019 primary care records that showed normal movement of all extremities, normal

muscle tone, and normal ambulation; a 2020 rheumatology examination that showed

some radiating pain to the right side, some elbow tenderness, and some mild myofascial

tenderness at 11 of 18 tender points, but which was otherwise unremarkable and which included

full cervical range of motion, no tenderness in the hands or wrists, full range of motion at the

shoulder girdle, intact collateral ligaments, no knee effusion, and intact tibiotalar and subtalar

joints; a 2020 examination at the Rothman Institute that revealed full spinal range of motion, no

spinal  tenderness, negative straight leg raising, negative Hoffman's and Spurling's tests, full

motor strength, intact reflexes, intact pulses, intact sensation, and Plaintiff's ability to perform

tandem gait and heel and toe walking without difficulty; more recent records from the Rothman

Institute that reflected Plaintiff's continued complaints of lower back pain and difficulty walking

in cold weather, but somewhat improved leg pain and no numbness or tingling; a 2021 examination that showed full range of motion, negative straight leg test, full strength, and intact sensation; 2021 physical therapy records that reflected complaints of only mild pain and difficulty; a Rothman Institute examination that showed no ligamentous laxity, symmetrical alignment, good pulses, intact resting tension, and completely intact Achilles' tendon and x-ray evidence that revealed a slightly prominent Haglund's prominence but no evidence of any spur, dislocation, fracture or abnormality of the left foot, and a diagnosis of strain of the Achilles tendon. R. 20–21. The ALJ's evaluation of this evidence finds substantial support in the record. *See B.K. v. Comm'r of Soc. Sec. Admin.*, No. CV 21-5732, 2022 WL 1718047, at *4 (D.N.J. May 27, 2022) ("In terms of consistency, a medical opinion will be more persuasive when it is consistent 'with the evidence from other medical sources and nonmedical sources in the claims.'") (internal citations omitted); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings); *cf. Diaz*, 577 F.3d at 504 ("The ALJ, of course, need not employ particular 'magic' words: '*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.'") (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)); *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL

4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.").

Plaintiff complains that the ALJ must have improperly relied on her own lay opinion of raw medical data to construct the RFC for a limited range of light work because she relied on the same findings as Dr. Cornejo, who opined that Plaintiff was limited to sedentary exertion. However, it is the ALJ−not medical providers—who is required to determine a claimant's RFC and disability status. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In addition, as noted above, the ALJ in this case properly considered the many normal or mild objective findings reflected in the record when she evaluated Dr. Cornejo's opinion under 20 C.F.R. § 404.1520c(1)−(2). R. 20−22; *see also Crossley*, 2021 WL 6197783, at *11; *Aponte*, 2021 WL 4963545, at *7. Notably, "[a]n ALJ is not conducting a lay interpretation of the record when [s]he cites to objective medical evidence and finds that it conflicts with a medical opinion. . . . [as] the regulations require the ALJ to compare a medical opinion with 'the objective medical evidence and supporting explanations presented by a medical source[.]'" *Naylor v. Kijakazi*, No. 4:20-CV-1507, 2022 WL 905545, at *11 (M.D. Pa. Mar. 28, 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also Bielat v. Kijakazi*, No. CV 20-349-E, 2022 WL 571938, at *1 n.3 (W.D. Pa. Feb. 24, 2022) (rejecting claimant's assertion that the "ALJ elevated his own lay interpretation of 'raw medical data over" a professional opinion and finding that "ALJs are obligated to review all the evidence and decide what limitations are appropriate for inclusion in the RFC; fulfilling that obligation does not mean an ALJ has inappropriately substituted his or her lay opinion for the medical opinion evidence in the record.") (citations omitted).

19

Next, the Court disagrees with Plaintiff to the extent that she insists that Dr. Cornejo's notes are "consistent" with his opined functional limitations and that the ALJ relied on a highly selective analysis of the evidence. *Plaintiff's Brief in Support of Review*, ECF No. 8, pp. 21–22; *Plaintiff's Reply Brief*, ECF No. 11, pp. 6, 9. As a preliminary matter, in the view of this Court, the ALJ did not rely on an improper selective review of the evidence. The ALJ  specifically noted positive findings in the record. R. 20–21. Although Plaintiff insists that the evidence is consistent with or supports Dr. Cornejo's opinion, the Court will uphold the ALJ's decision even if contrary evidence exists that supports the opposite conclusion, "as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)). The Court therefore declines Plaintiff's implicit invitation to the reweigh the evidence in her favor. *See Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Turning next to Dr. Hickman's opinion, Plaintiff complains that the ALJ characterized this opinion as "extreme" and inconsistent with the "record," but argues the ALJ did not cite to any specific inconsistent evidence. *Plaintiff's Brief in Support of Review*, ECF No. 8, p. 19 (citing R. 22). Plaintiff is mistaken. As set forth above, after finding that Dr. Hickman's opinion was, *inter alia*, "inconsistent with the record[,]" the ALJ went on to expressly point to examples

of such inconsistent evidence with citations to the record, including "follow-up visits to an orthopedic physician at Rothman [that] showed unremarkable examination findings"; "examination [of Plaintiff's ankle] showed no tear of the Achilles tendon"; Plaintiff "was treated conservatively, and the record shows no surgical intervention"; Plaintiff "testified that there was never any surgery recommended to her"; and Plaintiff's ability to perform certain activities of daily living. R. 22 (citations omitted). Moreover, the ALJ properly considered these unremarkable examination findings and Plaintiff's conservative treatment when evaluating the persuasiveness of Dr. Hickman's opinion. *See* 20 C.F.R. § 404.1520c(c)(3)(iii) (providing that, when considering a medical opinion, an ALJ may consider "[t]he kinds and extent of examinations and testing the medical source has performed or ordered"); *Brown v. Comm'r of Soc. Sec.*, No. 4:20-CV-2300, 2022 WL 4080773, at *7 (M.D. Pa. Sept. 6, 2022) ("Conservative treatment can be used as a factor in evaluating medical opinion evidence.") (citing 20 C.F.R. § 416.920c (c)(3)(iv)); *Koletar v. Kijakazi*, No. 1:21-CV-994, 2022 WL 3598090, at *13 (M.D. Pa. Aug. 23, 2022) (concluding that substantial evidence supported the ALJ's finding a medical opinion not persuasive because "the examination findings of the longitudinal record are not consistent with these rather extreme limitations," and the ALJ summarized medical evidence, including physical examinations that revealed, *inter alia*, stable gait, normal muscle tone, intact sensation, and normal reflexes except the plantar reflexes that were zero) (internal quotation marks omitted); *Crossley*, 2021 WL 6197783, at *11; *Aponte*, 2021 WL 4963545, at *7.

Plaintiff's assertion that the ALJ erred in her consideration of Dr. Hickman's opinion because that opinion is consistent with Dr. Cornejo's opinion, *Plaintiff's Brief in Support of Review*, ECF No. 8, p. 22, is unavailing. As set forth above, the Court has explained why the ALJ did not err in concluding that Dr. Cornejo's opinion was unpersuasive. Accordingly, the fact

that Dr. Hickman's opinion is, in Plaintiff's view, consistent with Dr. Cornejo's opinion does not

persuade the Court that the ALJ's consideration of Dr. Hickman's opinion was in error.

In continuing to attack the ALJ's consideration of the consistency of Dr. Hickman's

opinion, Plaintiff complains that the ALJ did not accurately describe Plaintiff's daily activities,

arguing as follows:

> She lives with her son and he does "almost everything." Tr. 41. She engages in
> limited exercise of swimming to reduce her knee and back pain in the summer only.
> Tr. 358. She no longer cooks full meals, cannot stand for long periods, and feels
> guilty that she can no longer wash more than a few dishes. Tr. 359. She spends
> approximately 6 hours per week doing household chores and spends 2 hours doing
> laundry on Fridays, 2 hours doing light cleaning on Saturdays, and 2 hours ironing
> on Sundays; her son does all the yard work and cleans the bathrooms, dusts, and
> mops. Id. As above, she does not disagree that inquiry about her activities is
> appropriate; however, an ALJ's *mischaracterization* of those activities is plainly
> not substantial evidence supporting a decision to deny benefits.

*Plaintiff's Brief in Support of Review*, ECF No. 8, pp. 20–21 (emphasis in the original).

However, and as previously detailed, the ALJ in fact noted that Plaintiff, *inter alia*, "prepares

meals, showers with a chair, exercises, reads, watches television, and does light household

chores, cares for her dog, performs her personal care, drives a car, can go out alone, shops in

stores, finishes what she starts, goes to church, and socializes and visits with friends and family."

R. 22. The ALJ's summary of Plaintiff's activities is not inconsistent with that of Plaintiff. For

example, while Plaintiff complains that she no longer cooks "full meals[,]" *id*. (citing R. 359,

Plaintiff's function report dated July 2021), she specifically stated in her function report that she

prepared her own meals, which consisted of canned soups, bagged salads, and sandwiches, and

which took one-half hour to prepare. R. 359. She also testified at the administrative hearing that

she can "cook some breakfast[.]" R. 41. In addition, the ALJ noted that Plaintiff "exercises," R.

22, and Plaintiff concedes that she swims in the summer to reduce her knee and back pain.

*Plaintiff's Brief in Support of Review*, ECF No. 8, p. 20. The ALJ further noted that Plaintiff

performs "light household chores," R. 22, and Plaintiff acknowledged that she washes a "few dishes" and "spends approximately 6 hours per week doing household chores and spends 2 hours doing laundry on Fridays, 2 hours doing light cleaning on Saturdays, and 2 hours ironing on Sundays[.]" *Plaintiff's Brief in Support of Review*, ECF No. 8, p. 20. Notably, Plaintiff does not appear to dispute the other activities listed by the ALJ, *i.e.*, showering with a chair, reading, watching television, caring for her dog, performing her personal care, driving a car, ability to go out alone, shopping in stores, finishing what she starts, going to church, and socializing and visiting with friends and family. *Id*. at 20–21. Based on this record, the Court cannot agree with Plaintiff that the ALJ mischaracterized Plaintiff's daily activities.

Plaintiff goes on to argue that her "sporadic" activities do not support a RFC for light exertional work and to work on a regular and continuing basis. *Plaintiff's Brief in Support of Review*, ECF No. 8, pp. 19–20; *Plaintiff's Reply Brief*, ECF No. 11, pp. 5–6. However, and based on the record above, this Court is not persuaded that Plaintiff's daily activities were so "sporadic" as to undermine the ALJ's consideration of such activities. Even accepting, for present purposes only, that these activities were in fact sporadic, the Court is not persuaded that the ALJ's consideration of such activities requires remand. As set forth above, Plaintiff's activities were but one factor that the ALJ considered when finding that Dr. Hickman's extreme opinion was unpersuasive. R. 22.

In short, for all these reasons, the ALJ's consideration of the opinions of Drs. Cornejo and Hickman enjoy substantial support in the record and Plaintiff has not persuaded this Court that the ALJ's assessment of these opinions violated the standards of 20 C.F.R. § 404.1520c.

### B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of her subjective complaints. *Plaintiff's Brief in Support of Review*, ECF No. 8, pp. 24–26; *Plaintiff's Reply Brief*, ECF No. 11, pp. 9–10.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 19–21. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 20. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support her findings. R. 19–22. The ALJ went on to further explain as follows:

> In sum, the above residual functional capacity assessment is supported by the evidence in the record. Undoubtedly, the claimant has severe impairments. However, the claimant's allegations are inconsistent with the medical evidence of record, which reflects no more than mild to moderate findings. The effects of the claimant's impairments restrict the claimant to work as set forth in the residual functional capacity stated above.

R. 23. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, contends that the ALJ failed to consider her "stellar" and "strong" work history of "37 uninterrupted years" when discounting Plaintiff's subjective complaints. *Plaintiff's Brief in Support of Review*, ECF No. 8, pp. 24–26; *Plaintiff's Reply Brief*, ECF No. 11, pp. 9–10. The Court is not persuaded that this issue requires remand. The United States Court of Appeals for the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not "explicitly discuss his years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015); *see also Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) ("[W]ork history is only one of many factors the ALJ may consider in assessing claimant's credibility. . . . Work history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors.") (citations omitted). Here, as noted above, the ALJ detailed why other record evidence undermined Plaintiff's subjective complaints. R. 19–23. Moreover, even though the ALJ did not expressly discuss Plaintiff's work history when assessing her subjective statements, the ALJ specifically referred to her work history when concluding that Plaintiff was capable of performing her past relevant work as a corrections officer, supervisor. R. 23; *cf. Burrell v. Kijakazi*, No. CV 21-3662, 2022 WL 742841, at *4 (E.D. Pa. Mar. 10, 2022) (finding that although "the ALJ did not mention Plaintiff's work history in her credibility assessment, she explicitly referenced Plaintiff's work history in her factual findings and when determining if jobs existed in the national economy that Plaintiff could

perform" and that "even if the ALJ failed to consider Plaintiff's work history, such failure does not constitute reversible error because the ALJ articulated how she reached her decision based on the evidence in the record"); *Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940 JBS, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) (rejecting the plaintiff's argument that the ALJ failed to consider her work history where "the ALJ did consider Plaintiff's work history by acknowledging her past relevant work as a cook" and that "work history is only one of many factors the ALJ may consider in assessing claimant's credibility" but that "[w]ork history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors").

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Acting Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  April 29, 2025                    *s/Norah McCann King*
                                    NORAH McCANN KING
                                    UNITED STATES MAGISTRATE JUDGE

27